UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE BURBICK and B-SQUARED
SALES GROUP, L.L.C.,,

      Plaintiff(s),

v.

PREMIER STEEL, L.L.C.,,

      Defendant(s).
_____/

Case No. 08-13406

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION [5] FOR PARTIAL DISMISSAL, BROUGHT PURSUANT TO FED. R. CIV. P. 12(b)(6), OR FOR PARTIAL SUMMARY JUDGMENT, BROUGHT PURSUANT TO FED. R. CIV. P. 56**

This commercial dispute comes before the Court on Defendant Premier Steel's motion to dismiss Count II of Plaintiffs' Complaint alleging that Defendant breached an implied contract between it and Plaintiffs Bruce Burbick and/or B-Squared Sales Group, L.L.C. Defendant seeks dismissal of Count II under both Federal Rule of Civil Procedure 12(b)(6) and 56 arguing that (1) Plaintiffs have failed to state a claim for relief for breach of an implied contract under either legal or equitable theories, (2) Plaintiffs cannot allege a claim for breach of an implied contract because an express contract exists on the same subject matter, and (3) no genuine issue of material fact exists whether the alleged express oral contract between Plaintiffs and Premier Steel is valid and enforceable.

For the reasons stated more fully below, Defendant's motion is DENIED.

I.  **Facts**

   A. **Allegations in Plaintiffs' Complaint**

Defendant Premier is a steel warehouse distributor and processor of prime flat-rolled steel. (Compl. ¶ 6.) In February 2004, Premier engaged Burbick as an independent sales representative for its various steel products. (Compl. ¶ 7.) Burbick came to Premier with considerable experience in the market and, through his experience and hard work, was quickly able to grow Premier's sales. Burbick also introduced Premier to several companies that supply parts to General Motors, and Premier still conducts business with these auto part supply companies. (Compl. ¶ 9.) As a result of Burbick's efforts on Premier's behalf, Premier's sales increased by nearly 40 percent during 2004. (Compl. ¶10.)

In 2005, several events occurred. First, Premier hired an administrative assistant to assist with the new business that Burbick was generating, and Burbick agreed to pay a management fee to Premier in the amount of $2,000 per month. (Compl. ¶ 11.) Second, Burbick formed B-Squared. After its formation, Premier paid all commissions earned through Burbick's efforts to B-Squared. (Compl. ¶ 12.) In 2005, Burbick was responsible for Premier sales in excess of $9 million. (Compl. ¶ 13.)

In 2006, Burbick was responsible for Premier sales in excess of $13 million, but by the fall of 2007, Burbick recognized that Plaintiffs' relationship with Premier was deteriorating. That business relationship ended on September 28, 2007. (Compl. ¶¶ 14-16.) At that time, Burbick was responsible for Premier sales in excess of $5 million, and Premier owed Burbick and/or B-Squared past due commissions in the amount of $65,044.73 and had

wrongfully withheld outstanding commissions in the amount of $65,665.95. (Compl. ¶¶ 17-19.)

In August 2008, Plaintiffs filed suit against Premier. Their Complaint alleges three Counts: (1) breach of an express contract (Count I), (2) breach of an implied contract (Count II), and (3) violation of Mich. Comp. Laws § 600.6921 due to Premier's unlawful failure to pay certain commissions owed to Plaintiffs Burbick and/or B-Squared (Count III). Counts I and II are relevant to Defendant Premier's motion for partial dismissal pursuant to Rule 12(b)(6) or for partial summary judgment pursuant to Rule 56.

As to Count I, it is alleged that Premier made and entered into an express oral contract with Burbick and/or B-Squared. It is further alleged that Burbick was either a direct or third party beneficiary of any express agreement entered into between B-Squared and Premier. (Compl. ¶¶ 8, 23.) The terms of that express contract include the following. Burbick and/or B-Squared were to act as independent contractor sales representatives for Premier. When an invoice was paid, Premier was to pay Burbick and/or B-Squared a commission of 33 percent of the net profit on orders that either Burbick/B-Squared originated. Burbick and/or B-Squared's accounts consisted of those customers mutually agreed upon by the parties, and Burbick and/or B-Squared was to be responsible for the payment of his/its business expenses. (Compl. ¶ 20.) Although Plaintiffs satisfied all contractual obligations, Premier did not. It breached the express contract when it (1) refused to pay Plaintiffs commissions earned when invoices were paid, and (2) charged Plaintiffs' commissions account for various losses Premier incurred that were unrelated to Plaintiffs' performance. (Compl. ¶¶ 21-22.) Plaintiffs suffered damages, including the loss

3

of earned commissions, as a direct and proximate result of Premier's breach of contract. (Compl. ¶24.)

As to Count II of Plaintiffs' Complaint, it is alleged that Premier breached an implied contract between it and Burbick and/or B-Squared. It is also alleged that Burbick was either a direct or third party beneficiary of any implied agreement between B-Squared and Premier. (Compl. ¶ 29.) Finally, it is alleged that the implied contract included the exact same terms as those alleged in Count I, that it was breached by Premier in the same manner as alleged in Count I, and caused Plaintiffs to suffer the same damages as alleged in Count I. (Compl. ¶¶ 26-28, 30.)

**B. Defendant Premier's Answer and Affirmative Defenses**

In its Answer to Plaintiffs' Complaint, Premier admits that Burbick was retained by it to sell Premier Steel's products under the terms alleged in Plaintiffs' Complaint. Premier avers, however, that Burbick also agreed to reimburse it an amount equal to one-third of the loss, if any, that Premier incurred with respect to any sale generated, as a setoff to any commissions earned or to be earned by Burbick in the future. (Answer ¶ 20; Affirm. Def. ¶ 2.) Premier denies that Burbick is either a direct or third party beneficiary of any express or implied agreement between B-Squared and Premier. It also denies that it breached any express or implied contract. (Answer ¶¶ 21-24, 27-30.)

Premier also asserts the following Affirmative Defenses that challenge the enforceability of any express oral contract between Premier and Plaintiffs: (1) lack of consideration, (2) inadequate performance, and (3) statute of frauds. (Affirm. Defs. ¶¶ 3, 6, and 10.)

4

## II.  Analysis

This matter is presently before the Court on Premier Steel's motion seeking dismissal of Count II of Plaintiffs' Complaint alleging that Premier breached an implied contract with Plaintiffs.  Premier's motion is brought under both Rule 12(b)(6) and 56.  The Court will first consider Premier's Rule 12(b)(6) arguments.

### A.  Rule 12(b)(6) Arguments

#### 1.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).   This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

**2. Application**

Premier Steel first argues that Count II of Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs (1) have failed to state a claim for relief for breach of an implied contract under either legal or equitable theories, and (2) cannot allege a claim for breach of an implied contract because their Complaint also alleges the existence of an express oral contract on the same subject matter. Both arguments are rejected.

Because it is evaluating a Rule 12(b)(6) motion, the Court views the allegations in Plaintiffs' Complaint in the light most favorable to them and assumes that all allegations are true. Plaintiffs allege that Burbick and/or B-Squared Sales Group had an express oral contract with Premier. They also allege that Burbick and/or B-Squared had an implied contract with Premier. Federal Rule of Civil Procedure 8(d) permits alternative, inconsistent pleading like this.[1]

---

[1] Rule 8(d) allows a plaintiff to plead alternative, inconsistent claims in a complaint. Specifically, Rule 8(d)(2) provides that:

> A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2).

> Rule 8(d)(3) provides that:
>
> A party may state as many separate claims . . . as it has, regardless of consistency.

Fed. R. Civ. P. 8(d)(3).

Despite Premier's claims to the contrary, Plaintiffs have stated a claim for relief for the breach of an implied contract under both legal and equitable theories. The Court first discusses the legal theory; implied-in-fact contract.

### a. Legal Remedy - Implied-in-Fact Contract

"Under Michigan law, an implied-in-fact contract arises between parties when those parties show a mutual intention to contract. The terms of their agreement will be determined by their conduct or other pertinent circumstances surrounding the transaction." *Kingsley Assoc., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995) (internal citations omitted). Taking the allegations in Plaintiffs' Complaint as true, the parties showed a mutual intent to contract. The allegations also set forth the terms of the implied-in-fact contract by discussing of the parties' conduct and other pertinent circumstances surrounding the business transactions at issue here. This is sufficient to survive a Rule 12(b)(6) motion to dismiss.

### b. Equitable Remedies - Unjust Enrichment and Promissory Estoppel

Under Michigan law, if an <u>enforceable</u> express contract exists, then the plaintiff cannot state a claim for the breach of an implied contract under the equitable theories of unjust enrichment or promissory estoppel. *See Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996). This is true even if the parties dispute the terms, scope, or effect of that valid, enforceable, express contract. *Id.* Similarly, if an implied-in-fact contract is found to have been formed, "the existence of an implied-in-fact contract, which provides a legal remedy, will bar a claim of unjust enrichment, which seeks an equitable remedy." *Kingsley Assoc.*, 65 F.3d at 506.

Plaintiffs do not allege that the express contract in Count I is legally enforceable as to either Burbick or B-Squared. Thus, because it is evaluating the allegations in Plaintiffs' Complaint on a Rule 12(b)(6) motion to dismiss, this Court cannot determine as a matter of law that the express oral contract alleged in Count I is valid and enforceable. Moreover, because Plaintiffs' Complaint leaves this issue open, Rule 8(d) allows them to plead the breach of an implied contract claim in Count II in the alternative. Fed. R. Civ. P. 8(d)(2), (3).

**(1) Unjust Enrichment**

Although not specifically pled as a separate claim, Plaintiffs argue that their Complaint alleges sufficient facts to state a claim for the equitable remedy of unjust enrichment. "Under Michigan law, a claim for unjust enrichment requires (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. In such circumstances, the law implies a contract to prevent unjust enrichment. A contract will be implied only if there is no express contract." *Burton v. Wm. Beaumont Hosp.*, 373 F. Supp. 2d 707, 722 (E.D. Mich. 2005) (internal citations omitted).

Applying the proper Rule 12(b)(6) standard, this Court finds that Plaintiffs' Complaint alleges the essential elements of an equitable claim for unjust enrichment. Considering the allegations in Plaintiffs' complaint, and drawing all reasonable inferences, it is alleged that, due to Plaintiff Burbick's performance as a sales representative for Premier Steel, Premier Steel obtained the benefit of approximately $5 million in steel sales prior to the termination of the parties' business relationship in 2007. (Compl. ¶ 17.) It is further alleged that, at that time, (1) Premier Steel owed Plaintiffs approximately $130,710 in sales commissions; and

(2) Premier Steel had wrongfully refused to pay those commissions and was thus unjustly enriched. (Compl. ¶¶ 18-19, 28.) These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss.

The Court now considers the equitable claim of promissory estoppel.

**(2) Promissory Estoppel**

Again, although not specifically pled as a separate claim, Plaintiffs argue that their Complaint alleges sufficient facts to state a claim for the equitable remedy of promissory estoppel. Under Michigan law, "the elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 593 N.W.2d 215, 219 (Mich. Ct. App. 1999) (internal quotations and citation omitted).

Applying the proper Rule 12(b)(6) standard, this Court finds that Plaintiffs' Complaint alleges the essential elements of an equitable claim for promissory estoppel. Considering the allegations in Plaintiffs' complaint, and drawing all reasonable inferences, it is alleged that, Premier Steel promised Burbick that he would receive a 33 percent commission on all sales that he generated from previously agreed-upon accounts. (Compl. ¶¶ 8, 26.) This promise induced Burbick to take action of a define and substantial character; i.e., he generated increased sales of Premier Steel's products in order to collect the promised commission. (Compl. ¶¶ 10, 13-14.) Plaintiff Burbick reasonably relied on the promise to pay these sales commissions to his detriment. Reliance is evidenced by Plaintiffs' sale performance and by Plaintiffs' payment to Premier Steel of $2,000 each month for the

expense of an administrative assistant hired by Premier to assist with the new business that Burbick was generating. Under these circumstances, enforcement of Premier Steel's promise to pay sales commissions owed to Plaintiffs, will avoid an injustice. (Compl. ¶¶ 8, 11, and 26.) These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss.

Having denied Premier Steel's Rule 12(b)(6) motion to dismiss, the Court now considers Premier's argument that it should be granted partial summary judgment on Count II of Plaintiffs' Complaint pursuant to Rule 56.

## B. Rule 56 Motion for Summary Judgment

### 1. Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### 2. Application

Although Premier's Answer and Affirmative Defenses are not to be considered when determining whether Plaintiffs' Complaint has stated a claim for relief for the breach of an implied contract, these are relevant to Premier's motion, brought pursuant to Rule 56, seeking summary judgment on that claim. If it appears from its Answer and Affirmative Defenses that Premier Steel "has kept its options open, and may deny the existence of a contract," then the existence of a valid express contract will be an "issue for the factfinder." *Terry Barr Sales Agency*, 96 F.3d at 182.

Despite Defendant's arguments to the contrary, several of the Affirmative Defenses asserted in its Answer challenge the enforceability of any express contract between Plaintiffs and Premier Steel. Specifically, it is asserted that the parties' agreement is unenforceable because it is barred by the statute of frauds, is supported by insufficient consideration, or was inadequately performed. (Affirm. Defs. ¶¶ 3, 6, and 10.) Because genuine issues of material fact exist on the issue of enforceability, this Court cannot determine at this early stage of the litigation that Plaintiffs' implied contract claim is barred as a matter of law. Accordingly, Premier Steel's Rule 56 motion is denied as premature.[2]

---

[2] Discovery is on-going and is expected to address the validity of the parties' express contract in light of Defendant's Affirmative Defenses. (Pls.' Resp. at 5.)

In light of its Answer and Affirmative Defenses, it cannot be said that Premier Steel has conceded that a valid, enforceable, express contract exists between itself and Burbick or itself and B-Squared. Until it does, this remains a genuine issue of disputed fact and thus precludes partial summary judgment under Rule 56.

**III. Conclusion**

For the above-stated reasons, Defendant's motion to dismiss is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 23, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager